UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------X

DESSIE WUBAYEH, DEGETNU T.
SHIMEKACH, FRANCIS EFAGENE,
SYLVESTER SUBERRO, VERNON
RICHARDS, MELAKU ASAMAW, OWEN
GARRISON and CLETUS AMAGWU,
      Plaintiffs,

  -against-

THE CITY OF NEW YORK and REGGIE
RIVERA,
      Defendants.

MEMORANDUM AND ORDER

Civil Action No.

CV-94-0404 (DGT)

---------------------------------X

Trager, J:

    Defendant City of New York ("City") has filed a motion to dismiss the above action for failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion to dismiss is granted.[1] In addition, although this motion was only brought by the City, this matter will be dismissed as to all defendants, pursuant to a

---

[1] Defendant Reggie Rivera ("Rivera") passed away on August 18, 2000. See Docket Entry ("DE") 199. The City brings this motion alone, but has stated that its arguments for dismissal would apply equally to defendant Rivera's estate if it was substituted for defendant Rivera in this action. See Defendant City's Memorandum of Law in Support of its Motion to Dismiss, dated Sept. 11, 2006 ("Def.'s Mem.") at 1.

1

district court's "power to dismiss for failure to prosecute sua sponte." Martens v. Thomann, 273 F.3d 159, 179 (2d Cir. 2001).

**Background**

Plaintiffs Dessie Wubayeh, Degetnu T. Shimekach, Francis Efagene, Sylvester Suberro, Vernon Richards, Melaku Asmamaw, Owen Garrison and Cletus Amagwu (collectively "plaintiffs") filed the initial sealed complaint in this action on January 28, 1994. Plaintiffs brought this civil rights action under 42 U.S.C. § 1983, alleging that defendant Reggie Rivera ("Rivera"), an officer with the New York City Police Department ("NYPD"), violated their constitutional rights by committing unlawful violent assaults and sexual abuse against them. See Second Verified Amended Complaint, dated April 17, 1995. Plaintiffs are each seeking in excess of $20 million in punitive and compensatory damages from the City and Rivera. Id.

**(1)**

**Initial Investigation and Litigation**

In 1994, the Queens County District Attorney's Office conducted an extensive investigation into the allegations of sexual assault by Officer Rivera. See Office of the Queens County District Attorney, Investigation Into Allegations of Sexual Assault by Police Officer Reggie Rivera, dated Dec. 15,

1994 ("DA Report"), attached as Exhibit A to Declaration of Seth D. Eichenholtz, dated Sept. 11, 2006.  The District Attorney's 146-page report (which was based on "hundreds" of interviews with the parties involved, review of all the available evidence, scrutiny of Officer Rivera's personal and professional history, and analysis by experts in sexual assault) found that there was no credible evidence to support the plaintiffs' allegations.  DA Report at 1-7.  Based on this investigation, the City declined to file any criminal charges against Officer Rivera.

The District Attorney's report also raised the "specter of fabrication" in the claims of the plaintiffs against Officer Rivera:

> [E]ach of the alleged victims has a motive to falsely accuse the officer.  Each earns his living illegally, employed in one capacity or another in the illegal livery van industry.  The accused officer has played an active and aggressive role in the police crackdown on this illegal industry.  He has issued thousands of summonses, seized numerous vans and made dozens of arrests.  A number of the alleged victims and their witnesses have been at the receiving end of the accused officer's efforts.  One was even arrested by him shortly before the first of the allegations was made.  The depth of the alleged victims' anger toward the accused officer was such that a meeting was organized by one of the alleged victims prior to the first reported alleged attack, the sole purpose of which was to drive the officer out of the Rockaways by filing false complaints against him.  This detail, standing alone, raises the specter of fabrication in this case.

DA Report at 5-6.

Plaintiffs have submitted a lengthy rebuttal to the District Attorney's report. See Plaintiff's Memo of Law in Opposition to

Motion to Dismiss Under Rule 41(b) of the Federal Rule of Civil Procedure, dated Oct. 16, 2006 ("Pl.'s Opp.") at Ex. B. Plaintiffs' rebuttal is unsigned and undated, but it is reportedly the "internal work product of plaintiffs' prior attorneys." Pl.'s Opp. at 1.

As the lengthy docket sheet for this case shows, the parties to this dispute engaged in discovery until October 1998. The parties also engaged in expert discovery and disclosure in preparation for trial. After the conclusion of discovery, Magistrate Judge Roanne L. Mann set a schedule for the parties' respective obligations for a pre-trial order, which was due to be submitted to the court by November 1, 1999. See Scheduling Order of Magistrate Judge Mann, filed August 5, 1999. This pre-trial schedule was interrupted when defendant Rivera filed a petition for Chapter 7 bankruptcy on September 1, 1999, prompting an automatic stay of this suit. Pursuant to an order dated September 17, 1999, this suit was stayed and administratively closed pending the disposition of Officer Rivera's bankruptcy petition.

**(2)**

**Bankruptcy Court Proceedings**

Defendant Reggie Rivera's Chapter 7 bankruptcy petition was overseen by Judge Dorothy Eisenberg of the Eastern District of New York (Central Islip) Bankruptcy Court. See Docket for

Bankruptcy Petition # 8-99-87476-DTE. Plaintiffs participated as creditors in the Rivera bankruptcy with two separate series of actions: an adversary proceeding contesting the discharge of Rivera's debt to plaintiffs, and a separate motion seeking to lift the automatic stay against plaintiffs' civil suit.

**a. Adversary Proceeding in Bankruptcy Court**

On November 9, 1999, plaintiffs initiated an adversary proceeding in bankruptcy court under 11 U.S.C. § 523, seeking to declare that the debt owed by Rivera to the plaintiffs would not be discharged by the Chapter 7 bankruptcy. See Docket for Adversary Proceeding # 8-99-08489-DTE. After Rivera failed to respond to a summons that was served on November 15, 1999, plaintiffs filed a motion for default judgment on March 1, 2000. After a series of hearings on this motion were adjourned, to permit Rivera to appear and answer, plaintiffs' motion for default judgment was granted by the bankruptcy court after a hearing on December 11, 2001, subject to the court's instructions to plaintiffs to "settle an order" pursuant to the E.D.N.Y. Bankruptcy Court's Local Rule 9072-1.

Because the plaintiffs failed to follow the court's instructions to file a proposed order, the bankruptcy court was unable to enter a final default judgment in the plaintiffs' adversary proceeding at that time. Instead, the bankruptcy court

issued a notice of proposed dismissal to the plaintiffs on March 20, 2002. Plaintiffs failed to respond to this notice. The bankruptcy court therefore dismissed the plaintiffs' motion for default judgment on April 1, 2002.

By the admission of plaintiffs' counsel, plaintiffs' "attempts to restore the non-dischargeability status in the case met with difficulty and little success in unraveling the issue" until "counsel retained specialist bankruptcy counsel" in 2004. Pl.'s Opp. at 6. Finally, on April 13, 2004, Bankruptcy Court Judge Eisenberg issued an order reopening the adversary hearing and ordering that "the Debtor-Defendant's debt to the Plaintiffs is not dischargeable under Section 523(a)(6) of the United States Bankruptcy Code." Pl.'s Opp. Ex. I.

**b. Lifting of the Automatic Stay**

Parallel to the plaintiffs' adversary hearing over the dischargeability of Rivera's debt, the plaintiffs also filed a motion in bankruptcy court on April 3, 2000 seeking relief from the automatic stay of this civil suit. On April 27, 2000, the bankruptcy court held a hearing on this motion, and granted the motion subject to the requirement that plaintiffs submit a final order. On May 18, 2000, Bankruptcy Court Judge Eisenberg issued a final order lifting the stay of the current civil action.

On February 21, 2001, plaintiffs submitted a letter informing this Court that the bankruptcy stay had been lifted and asking the court to return the current action to the calendar. Pl.'s Opp. Ex. G. The request to reopen this case was granted on April 23, 2001. Plaintiffs then submitted a letter dated June 29, 2001 to Magistrate Judge Mann, stating that discovery was complete and requesting a schedule for trial in this case. Pl.'s Opp. Ex. H. The record does not show any further action by Judge Mann, and according to plaintiffs' counsel, "[n]o action was taken by the Court with respect to, or in response to this application by plaintiffs counsel." Pl.'s Opp. at 6. There is also no record of any further action taken by plaintiffs to complete the pre-trial order or establish a schedule for trial until plaintiffs' counsel "forwarded plaintiffs' portion of the Pretrial Order to the City so that it could be completed and filed with the Court" on Dec. 1, 2005. Pl.'s Opp. at 6 and Ex. J.

(3)

**Current Motion**

To resume the current action, plaintiffs asked the City to complete the pre-trial order in a series of letters and telephone calls during December 2005 and January 2006. Pl.'s Opp. at 6. Plaintiffs state that "a supervisor in the City's Law Department

7

responded by informing plaintiffs' counsel that the City would not complete a pretrial order unless ordered to do so by the Court." Id. Plaintiffs then requested, and were granted by Magistrate Judge Mann on May 5, 2006, an order instructing the parties to complete the pre-trial order.

The parties to this action held a status conference on June 13, 2006. In light of the death of Officer Rivera, the parties were asked to submit letters to the Court regarding the City's possible indemnification of Officer Rivera, or possible liability for Rivera's actions. See DE 205, 207 & 208. Following a subsequent status conference held on July 31, 2006, the City filed the current motion to dismiss this action based on the plaintiffs' failure to prosecute.

## Discussion

Under Federal Rule of Civil Procedure 41(b), a defendant may move to dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court." Fed. R. Civ. P. 41(b). The Second Circuit has set forth a five-factor test to guide a trial court's exercise of its discretion over a Rule 41(b) motion to dismiss. See United States ex rel. Drake v. Norden Systems, Inc., 375 F.3d 248, 254 (2d Cir. 2004). This test requires consideration of (1) whether the failures to prosecute caused a delay of significant duration; (2) whether the

plaintiff was given notice that further delay would result in dismissal; (3) whether the defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calender congestions balanced against plaintiff's right to an opportunity for a day in court; and (5) whether lesser sanctions would be a more appropriate remedy than dismissal.  See Dosunmu v. United States, 361 F. Supp. 2d 93, 100 (E.D.N.Y. 2005) (applying Second Circuit five-factor test).

Dismissal for failure to prosecute is a harsh sanction that is "reserved for use only in the most extreme circumstances." Norden Systems, 375 F.3d at 251.  But this sanction is appropriate here.  The plaintiffs' significant delay weighs overwhelmingly in favor of granting this motion to dismiss.  And although the other factors may not weigh as strongly against the plaintiffs, there are no factors to mitigate that delay or the prejudice resulting to the defendant.

In addition, "it is entirely proper for the judge to consider the likely merits of the suit in deciding whether to dismiss it for failure to prosecute." Dosunmu, 361 F. Supp. 2d at 99 (quoting Ball v. City of Chicago, 2 F.3d 752, 759 (7th Cir. 1993)).  The plaintiffs litigated this suit for over five years before it was interrupted by the bankruptcy stay.  During that time, the plaintiffs failed to provide any credible evidence to question the conclusions of the District Attorney's report

9

exonerating defendant Rivera.[2]  Under the circumstances, there is no reason to prolong this case any further.

Based on a consideration of all of these factors, this motion to dismiss will be granted in its entirety.


**(1)**

**Plaintiffs' Failure to Prosecute Caused a Delay of Excessive Duration**

The City properly maintains that plaintiffs' delay of over four years, from the lifting of the bankruptcy stay of this suit in 2001 until plaintiffs' communication with the City regarding the pre-trial order in December 2005, is excessive.  <u>See</u> Def.'s Mem. at 5.  There is no evidence of any effort by plaintiffs to prosecute this lawsuit between July 2001, when plaintiffs requested a trial schedule from Magistrate Judge Mann, and December 1, 2005, when plaintiffs sent their portion of a joint pre-trial order to defendants.  Plaintiffs had an obligation to pursue this litigation after they successfully moved to have the stay lifted.  Their failure to do so for over four years

---

[2] In fact, the testimony of one of plaintiffs' witnesses at an early hearing on this case lacked credibility, and appeared to be an attempt to manufacture evidence and present false testimony.  <u>See</u> Hr'g Tr. 59-60, Apr. 7, 1995 (referencing plaintiffs' "misconduct" at earlier hearing); Hr'g Tr. 22-23, Dec. 27, 1994 (referencing lack of credibility of plaintiffs' witness).

constitutes grounds for dismissal. See Shannon v. General Electric Co., 186 F.3d 186, 194 (2d Cir. 1999) (dismissal for failure to prosecute after delay of nearly two years).

Plaintiffs counter that they could not pursue this civil suit while they contested the dischargeability of defendant Rivera's debt in bankruptcy court between 1999 and 2004. See Pl.'s Opp. at 6. This argument is unavailing. The plaintiffs could resume litigating this section 1983 action once the bankruptcy stay was lifted on May 18, 2000. Plaintiffs were required to attend to this suit after it was reopened on April 23, 2001. Although the dischargeability of defendant Rivera's debt might be relevant to the financial reward plaintiffs hoped to receive from this lawsuit, plaintiffs' prosecution of this action was in no way contingent on the bankruptcy court's treatment of Rivera's Chapter 7 petition. The fact that plaintiffs were busy with the issue of Rivera's dischargeability in Bankruptcy Court does not excuse their failure to prosecute this case at the same time.

Even assuming arguendo that plaintiffs were correct in their belief that they were required to resolve the dischargeability issue before resuming this Section 1983 suit, the record shows that plaintiffs still failed to litigate the bankruptcy proceeding in a timely fashion. First, plaintiffs should have concluded their adversary proceeding against Rivera shortly after

the bankruptcy court granted plaintiffs' motion for default judgment on December 11, 2001.  The subsequent two-and-a-half years of delay resulted because of the failure of plaintiffs' counsel to follow the instruction of the bankruptcy judge to settle an order.[3]  The inability of plaintiffs to follow procedural requirements does not excuse such a lengthy delay.

Second, plaintiffs have offered no evidence to explain the delay between Judge Eisenberg's April 1, 2002 order dismissing plaintiffs' motion for default judgment and the August 27, 2003 scheduling of a new pre-trial conference in that action.  If plaintiffs truly believed that they were required to resolve the dischargeability action, then they also had an obligation to pursue that action in a timely manner.  See Madison-Onondaga Corp. v. Kanaley, 241 B.R. 795 (Bankr. S.D.N.Y. 1999) (dismissing bankruptcy court adversary proceeding sua sponte for failure to prosecute).

Moreover, plaintiffs have also offered no explanation at all for their failure to act on this case between April 13, 2004, when the bankruptcy court issued the dischargeability order sought by plaintiffs, and December 1, 2005, when plaintiffs

---

[3] Plaintiffs' counsel appears to misconstrue the basis for the Bankruptcy Court's dismissal of plaintiffs' motion for default judgment.  This dismissal occurred after plaintiffs' failure to settle an order, and after notice from the court, and not simply because "the Bankruptcy Court administratively reopened the Bankruptcy matter with respect to the issue of the non-discharged status of Rivera."  Pl.'s Opp. at 6.

resumed contact with the City.  See Pl.'s Opp. Ex. J.  Even forgiving the plaintiffs' delays in bankruptcy court, they were required to resume this civil suit promptly after the bankruptcy proceedings were closed.  This unexplained delay of nineteen-and-a-half months remains an adequate basis for dismissal.[4]

**(2)**

**Plaintiffs' Delay Prejudiced Defendants**

Prejudice resulting from unreasonable delay may be presumed as a matter of law.  See Peart v. City of New York, 992 F.2d 458, 462 (2d Cir. 1993); Dosunmu, 361 F. Supp. 2d at 100.  Therefore, the defendant is entitled to a presumption of prejudice based on plaintiffs' delays.

In addition, the City has offered specific facts to support its claim of prejudice.  Plaintiffs' delay in prosecuting this case has compounded the difficulties that have inevitably arisen due to the death of Officer Rivera on or about August 19, 2000.  For example, the City states that its current attorneys had no

---

[4] As noted above, the City has argued for a full dismissal of this case against both defendants.  Plaintiffs clearly failed to prosecute this case against the City for over four years.  Even if defendant Rivera (or his estate), as a party to the ongoing bankruptcy action, was aware of plaintiffs actions in bankruptcy court, the plaintiffs still have no excuse for failing to resume this suit against Rivera after the stay was lifted in 2001.  At the very least, the nineteen-and-a-half month delay after the end of plaintiffs' bankruptcy action against Rivera provides grounds for dismissal.

personal contact with defendant Rivera, whereas "[f]ive years ago, defendant Rivera had recently passed away and the attorneys assigned to the matter . . . had personally spoken with him." Def.'s Mem. at 6-7.

The City also initially asserted that it was unable to contact one of its key witnesses, Sergeant Gary Weisbecker, the retired NYPD internal affairs officer responsible for the Police Department's initial investigation into the allegations against defendant Rivera. Id. At 8. It appears that the plaintiffs have in fact been able to locate this witness. Pl.'s Opp. at 3. Nonetheless, the City is correct to argue that the retirement of Sergeant Weisbecker, as well as the inevitable worsening of his memory in the twelve years since his initial investigation, is enough to show some prejudice to the City. See Defendant City's Reply Memorandum of Law in Further Support of its Motion to Dismiss ("Def.'s Reply") at 4. Similarly, the City raises a valid presumption that its other key witness, the sexual assault expert Dr. Eileen Tracey, would be less able to testify about her evaluation of this case after the passage of so many years. See Def.'s Mem. at 9-10.

In short, it is presumably more difficult, as a result of plaintiffs' delays, for the City to present competent testimony to support its assertions that the plaintiffs' allegations against defendant Rivera are baseless. See Shannon, 186 F.3d at

14

195 (finding presumption of prejudice because events at issue in lawsuit had taken place over a decade earlier, so "the likelihood that evidence in support of . . . defendants' position had become unavailable and that their witnesses' recollection had diminished was quite large"); Peart, 992 F.2d at 462 (citing potential for witness recollection to diminish or witness unavailability as the reason for a presumption of prejudice due to unreasonable delay); Dodson v. Runyon, 957 F. Supp. 465, 470 (S.D.N.Y. 1997) (dismissal appropriate after plaintiff's five-year delay; court can presume that witnesses' "memories have faded" when eleven years have passed since the events giving rise to plaintiff's cause of action). The City reasonably states that it "was more prepared to present this case to a jury five years ago, as opposed to today." Def.'s Mem. at 6. Therefore, the factor of prejudice also weighs in favor of dismissal.

(3)

**Additional Factors Weighing in Favor of Dismissal**

Plaintiffs have been represented by counsel throughout this lawsuit. Although there was a change in counsel in October 1997, see DE 176, the current counsel has been in place throughout the procedural history discussed here. No reasonable counsel could expect that the lengthy abandonment of this case would not implicate the failure to prosecute provisions of Rule 41(b). The

presence of counsel throughout this delay encourages a reasonable presumption that plaintiffs were aware that dismissal is proper under such circumstances.  See Dosunmu, 361 F. Supp. 2d at 101.

Finally, as noted above, the available evidence in this case weighs strongly against the plaintiffs' allegations.  Plaintiffs have had sufficient time and opportunity to pursue these claims already, and under the circumstances it is fair and reasonable to dismiss this case so that the court can turn its attention to other matters on a congested docket.  There is no need for lesser sanctions.  Based on a review of "the record as a whole," Norden, 375 F. 3d at 254, dismissal is warranted.

## Conclusion

For the reasons cited here, defendant's motion to dismiss is granted.  The Clerk of the Court is directed to close the case.

Dated:    Brooklyn, New York
          September 18, 2007

                              SO ORDERED:

                              _____/s/_____
                              David G. Trager
                              United States District Judge